**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| Lt. Commander Kenneth J. Whitwell, | : | |
| | : | C. A. No.: 05 CV 796 SLR |
| Plaintiff, | : | |
| | : | |
| v. | : | TRIAL BY JURY OF TWELVE |
| | : | DEMANDED |
| | : | |
| Archmere Academy, Inc., a Delaware | : | |
| corporation; | : | |
| The Catholic Diocese of Wilmington, Inc., | : | |
| a Delaware corporation; | : | |
| Rev. Edward Smith, individually and | : | |
| in his official capacity; and | : | |
| Rev. Michael A. Saltarelli, in his official | : | |
| capacity, | : | |
| | : | |
| Defendants. | : | |

**REPLY BRIEF OF DEFENDANT ARCHMERE ACADEMY, INC. IN SUPPORT
OF ITS MOTION TO DISMISS**

ELZUFON AUSTIN REARDON
TARLOV & MONDELL, P.A.


MARK L. REARDON (#2627)
300 Delaware Avenue, 17th Floor
P. O. Box 1630
Wilmington, DE   19899-1630
(302) 428-3181
E-Mail:  mreardon@elzufon.com
Attorney for Defendant
Archmere Academy, Inc.


Dated:  November 6, 2006

# TABLE OF CONTENTS

PAGE

TABLE OF CITATIONS ............................................................................................ iv, v

NATURE AND STAGE OF PROCEEDINGS ................................................................1

SUMMARY OF ARGUMENT .......................................................................................2

COUNTER STATEMENT OF FACTS ........................................................................3, 4

ARGUMENT ..................................................................................................................5

    I.     DELAWARE'S BORROWING STATUTE REQUIRES APPLICATION OF DELAWARE'S TWO-YEAR STATUTE OF LIMITATIONS AND THUS WARRANTS THE DISMISSAL OF ALL CLIAMS AGAINST ARCHMERE. ................................................................................ 5

          A.    Delaware's Borrowing Statute Requires that Delaware's Two-Year Statute of Limitations Bar Plaintiff's Claims Against Archmere ............................................... 5

          B.    Plaintiff's Tenuous Interpretation of Delaware's Borrowing Statute is Misguided and Unsupported ......................................... 7

    II.    DELAWARE HAS THE MOST SIGNIFICANT RELATIONSHIP TO PLAINTIFF'S CLAIMS AGAINST ARCHMERE; THUS, DELAWARE LAW AND ITS STATUTE OF LIMITATIONS MUST APPLY ........................................................ 10

          A.    The Relevant Factors for Determining the State with the Most Significant Relationship Require Application of Delaware Law ......................................... 10

              1.    Place Where the Injury Occurred was Fortuitous ............................. 10

              2    The Place Where the Injury Occurred was Fortuitous and Therefore Vermont law Does Not Apply ................................... 12

              3.    The Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties Overwhelmingly Support the Application of Delaware Law ................................................................. 13

## <u>TABLE OF CONTENTS (Con't)</u>

4.    The Place Where the Relationship Between the Parties is Centered Warrants Application of Delaware Law ................................................................. 13

B.    Public Policy and The Restatement (Second) of Conflicts Requires Application of Delaware's Statute of Limitations ................................................................. 13

C.    Since Delaware Law Applies to the Issues of Alleged Negligence of Archmere, 10 <u>Del.</u> <u>C.</u> §8119 Bars Plaintiff's Claims Against Archmere ................................................ 15

CONCLUSION ................................................................................................................ 17

## TABLE OF CITATIONS

**CASES**                                                                          **PAGE**

Amoroso v. Joy Manufacturing Company,
531 A.2d 619 (Del. Super. 1987)........................................................................6

B. Lewis Productions, Inc. v. Bean,
2005 WL 273298 (D. Del. Jan. 28, 2005)..........................................................7, 8, 9

Camden County Board of Chosen Freeholders v. Beretta, U.S.A. Corp,
273 F.3d 536 (3d. Cir. 2001) ............................................................................9

Carpenter v. Rohn & Haas Co., 75 F.Supp. 732 (D. Del. 1948)
*aff'd* 170 F.2d 146 (3d Cir. 1948), *cert. denied* 336 U.S. 904 (1949) ...........................6

Dymond v. NBC, Inc.,
559 F. Supp. 734 (D. Del. 1983)........................................................................5

Elmer v. Tenenco Resins,
698 F. Supp. 535 (D. Del. 1988) ....................................................................5, 10

Hartz v. Diocese of Greensburg,  94 Fed. Apx. 52 (3d. Cir. 2004)
quoting 42 Pa. Cons.Stat. Ann. §5521(b) ..........................................................6, 7

Levine v. Levine,
209 F. Supp. 564 (D. Del. 1962)........................................................................5

Lunn v. United Aircraft Corp.,
182 F. Supp. 12 (D. Del. 1960)..........................................................................6

Pittman v.Malandia,
2001 WL 1221704 (Del. Super.)........................................................................12

Rash v. C. & M. Corp.,
218 A.2d 670 (Del. 1966) ................................................................................15

Saudi Basic Industries Corporation v. Mobil Yanbu Petrochemical Company, et al.,
866 A.2d 1 (Del. 2005) ................................................................................7, 8, 9

Smoluk v. Basco, Inc.,
1988 WL 40156 (Del. Super. 1988).....................................................................15

Thomson v. Reinco, Inc.,
2004 WL 1426971 (Del. Super.)........................................................................11

## TABLE OF CITATIONS (Con't)

Travelers Indemnity Company v. Lake,
594 A.2d 38 (Del. 1991) ................................................................................................14

## OTHER AUTHORITIES

42 Pa. Cons.Stat. Ann. §5521(b) ....................................................................................7

12 Vt. Stat. Ann §522 .................................................................................................... 4

10 Del. C. §§8119, 1820, 1821 .............................................................2, 4, 6, 14, 15, 16

Restatement (Second) of Conflicts §§6, 145, 146 (1971).....................................10, 13, 14

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Kenneth J. Whitwell ("Plaintiff") filed this action in diversity against defendants Archmere Academy, Inc. ("Archmere"), the Catholic Diocese of Wilmington, Inc. ("Diocese"), Rev. Michael A. Saltarelli ("Bishop Saltarelli"), and Rev. Edward Smith ("Fr. Smith") on November 17, 2005.  Plaintiff seeks money damages for personal injuries stemming from alleged sexual abuse by Fr. Smith in 1984 and 1985.

Archmere, the Diocese, and Bishop Saltarelli each filed Motions to Dismiss on March 27, 2006, and each filed Opening Briefs on June 23, 2006, pursuant to a Stipulated Briefing Schedule approved by this Court on March 29, 2006.  Plaintiff filed his Joint Answering Brief on September 22, 2006.

This is Archmere's Reply Brief in support of its Motion to Dismiss.

[THIS SECTION LEFT INTENTIONALLY BLANK]

1

## SUMMARY OF ARGUMENT

Plaintiff's claims against Archmere must fail because the application of Delaware's borrowing statute to this diversity suit in the Federal District of Delaware requires that Delaware's two-year statute of limitations bar plaintiff's claim. 10 Del. C. § 8121. Although plaintiff argues that Vermont law and its six-year statute of limitations applies to the case as a result of the sexual abuse he allegedly suffered on two occasions in 1984 and 1985, Archmere contends that clear legal precedent guides this Court in determining that Delaware's shorter statute of limitations must apply.

Further, because Delaware is the state with the most significant relationship to the present cause of action under a conflict of laws analysis, Delaware law must apply to plaintiff's claims against Archmere.  Thus, plaintiff's claims against Archmere are time-barred by 10 Del. C. §8119.

[THIS SECTION LEFT INTENTIONALLY BLANK]

## <u>COUNTER STATEMENT OF FACTS</u>

While Archmere Academy, Inc. ("Archmere") categorically denies most of the inflammatory recitation in plaintiff's so-called "Statement of Facts," at this stage of the litigation a point-by-point opposition is neither appropriate nor necessary.  Instead, Archmere presents in summary fashion those undisputed and material facts necessary for summary disposition of the claims against Archmere:

Defendant Archmere is a Delaware non-profit organization located in Claymont, Delaware.  (D.I.1, Complaint ¶9).  For three-quarters of a century, Archmere's faculty, staff, and administrative personnel have operated entirely from the School's campus in Delaware.

Also a defendant in this matter is Catholic Diocese of Wilmington; it, too, is a Delaware corporation doing business in Delaware.  The Rev. Michael A. Saltarelli, in his official capacity as Bishop of the Diocese of Wilmington, is also a resident of Delaware.  The Diocese is alleged to have authorized Rev. Edward Smith ("Fr. Smith") to function in a priestly capacity in the Diocese of Wilmington from 1982 through the present. (Id. at ¶¶12, 13).  At all relevant times, Fr. Smith was a resident of Delaware.

Plaintiff is a resident of Virginia and a citizen of Florida.  While attending Archmere as a high school student, plaintiff was a resident of Pennsylvania. (Id. at ¶7).  Plaintiff alleges that on two occasions, once in 1984 and once in 1985, Fr. Smith took him on ski trips to Killington, Vermont. (Id. at ¶¶30,37).  Plaintiff alleges that Fr. Smith sexually abused him during these two weekend trips to Vermont, and he alleges that as a result of the abuse, he suffered immediate and long-term injuries. (Id. at ¶¶39, 40).

Though he is a highly successful and decorated Navy officer who has degrees from Villanova University and the Pacific University of Optometry, plaintiff complains of confidence and self-esteem problems, as well as difficulties in forming relationships with women. (Id. at ¶¶ 24, 50-51).  Plaintiff married in 1997, and he has two sons. (Id. at ¶¶50, 52, 56).

In early 2000, plaintiff recognized a connection between the poor manner in which he treated his wife and his "past sexual abuse." (Id. at ¶55).  However, plaintiff claims that he did not discover a causal connection between the alleged 1984-85 abuse and the injuries for which he is seeking damages until the spring of 2003, while he underwent therapy. (Id. at ¶43).

Plaintiff alleges repressed memories and traumatic amnesia since 1992; plaintiff does not allege amnesia or repressed memories from the years 1985 through 1992.  (Id. at ¶46).  Plaintiff filed this suit on November 17, 2005, seeking damages for various torts under Vermont law.  Vermont law permits a plaintiff to bring suit up to six (6) years from the date of the act or six (6) years from the time the victim discovers the injury is related to the act. 12 Vt. Stat. Ann §522.  Delaware's personal injury statute of limitations is two (2) years. 10 Del. C. §8119.  Plaintiff claims that Vermont law and its statute of limitations should apply to the case because Vermont has the most significant relationship to the parties. (Id. at ¶1-6).

Archmere filed its Motion to Dismiss on June 23, 2006, and plaintiff filed his Answering Brief on September 22, 2006.  This is Archmere's Reply Brief in support of its Motion to Dismiss.

<u>**ARGUMENT**</u>

I.    **DELAWARE'S    BORROWING    STATUTE    REQUIRES
      APPLICATION OF DELAWARE'S TWO-YEAR STATUTE OF
      LIMITATIONS AND THUS WARRANTS THE DISMISSAL OF
      ALL CLAIMS AGAINST ARCHMERE**

Plaintiff acknowledges that "[a] Federal District Court sitting in diversity in Delaware must apply Delaware's Conflict of Law rules in determining what state law will govern." (D.I. 17 Answering Brief "Ans. Br." at 14, citing <u>Dymond v. NBC, Inc.</u>, 559 F. Supp. 734, 735 (D. Del. 1983)).  To that end, it is undisputed that Delaware's borrowing statute applies to the pending matter.

A.    **Delaware's Borrowing Statute Requires That Delaware's Two-
      Year Statute of Limitations Bar Plaintiff's Claims Against
      Archmere**

Delaware's time-tested and judicially sanctioned borrowing statute has direct application on the issue of which statute of limitation should apply – Delaware's or Vermont's.  Given the clear differences between Vermont's and Delaware's statutes of limitation, it is apparent that Delaware's two-year statute of limitations has bearing on this case.  <u>Elmer v. Tenenco Resins</u>, 698 F. Supp. 535, 539 (D. Del. 1988) ("Because Delaware's borrowing statute requires the Court to apply the *shorter* of the Delaware statute of limitations or the statute of limitations of the state where the cause of action arose, and plaintiff's claim is time barred under Delaware law, further analysis of where the action arose and what statute of limitations would apply there is unnecessary."); <u>Dymond v. National Broadcasting Company</u>, 559 F.Supp. 734 (D. Del. 1983); <u>Levine v. Levine</u>, 209 F. Supp. 564 (D. Del. 1962)("Under Delaware law, a cause of action arising outside the State cannot be enforced in Delaware after the expiration of whichever is

shorter, the time limited by Delaware or the time limited by the law of the state where the cause of action arose. 10 <u>Del. C.</u> §8120. In this case, if a statute of limitations applies at all, it would be the three year Delaware statute rather than the six year Statute of Limitations of Pennsylvania, where the cause of action arose.")(*Citations Omitted*.); <u>Lunn v. United Aircraft Corp</u>., 182 F. Supp. 12, 13 (D. Del. 1960)("The appropriate principle of the law of Delaware is that if the action is barred by the statute of limitations of the forum, no action can be there maintained though the action is not barred in the jurisdiction where the cause of action arose."); <u>Carpenter v. Rohm & Haas Co.</u>, 75 F.Supp. 732, 734 (D. Del. 1948) ("The appropriate principle of the law of Delaware is that if the action is barred by the statute of limitations of the forum, no action can be there maintained though the action is not barred in the jurisdiction where the cause of action arose."), *aff'd* 170 F.2d 146 (3d Cir. 1948), *cert. denied* 336 U.S. 904 (1949); *See also* <u>Amoroso v. Joy Manufacturing Company</u>, 531 A.2d 619, 621 (Del. Super. 1987)(Delaware's statute had run, so, pursuant to the borrowing statute, the court looked to no other possible applicable state law; the case was dismissed as time-barred).

In Archmere's Opening Brief, reliance is placed on <u>Hartz v. Diocese of Greensburg</u>, 94 Fed.Appx. 52 (3d Cir.2004), a recent sex abuse case of nearly identical procedural facts to the case *sub judice*.  Plaintiff contends that <u>Hartz</u> is unpersuasive because <u>Hartz</u> involved application of Pennsylvania's, not Delaware's, borrowing statute. However, careful comparison of Pennsylvania's and Delaware's borrowing statutes further underscores the relevance of <u>Hartz</u> and emphasizes the appropriateness of applying Delaware's two-year statute to the claims against Archmere.  Pennsylvania's borrowing statute holds: "'[t]he period of limitation applicable to a claim accruing

outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim.'" <u>Hartz v. Diocese of Greensburg</u>, 94 Fed.Appx. 52 (3d Cir.2004), *quoting* 42 <u>Pa. Cons.Stat. Ann</u>. §5521(b).

As the underlying borrowing statutes in Pennsylvania and Delaware are substantively identical, and the procedural status of <u>Hartz</u> parallels this case precisely, <u>Hartz</u> is persuasive, if not dispositive, of the choice of law issue here.  Under <u>Hartz</u>, the Delaware borrowing statute precludes plaintiff from bringing his stale claim to the forum of Delaware, where the statute of limitations has already run.

**B.     Plaintiff's Tenuous Interpretation of Delaware's Borrowing Statute is Misguided and Unsupported**

Plaintiff's contention that recent rulings in the Delaware Supreme Court and in a Memorandum Opinion from this Court have changed the landscape of federal cases brought in diversity in Delaware is unfounded.

Plaintiff looks to <u>Saudi Basic Industries Corporation v. Mobil Yanbu Petrochemical Company, et al.</u>, 866 A.2d 1 (Del. 2005) and <u>B. Lewis Productions, Inc. v. Bean</u>, 2005 WL 273298 (D. Del. Jan. 28, 2005) to redirect and alter entirely the way in which this Court should address choice of law and statute of limitations issues.  For instance, in the caption of his argument on the borrowing statute, plaintiff refers to "guiding principles" of the borrowing statute "weighing in favor of applying Vermont law." (D. I. 17, Ans. Br. at 14).  This is a flagrant mischaracterization.  There is no balancing of equities or weighing of factors in which the Court should engage in applying the borrowing statute.  Despite plaintiff's attempt to convince this Court that decades of

case law has been eradicated by a narrow, fact-specific Delaware Supreme Court case and an unreported Memorandum Opinion, Archmere is confident that the Court will see through plaintiff's rhetoric and find that the present case must be dismissed as time-barred.

Plaintiff makes acrobatic attempts to apply the fact-and-situation-specific discussion of Delaware's borrowing statute in <u>Saudi</u> to the facts at hand. This, too, is to no avail. Analysis of Delaware's borrowing statute in <u>Saudi</u> is not "one size fits all," and Plaintiff's contention that the Delaware Supreme Court intended its contextual analysis of the borrowing statute in <u>Saudi</u> to be an "authoritative ruling" that "invalidated" prior interpretations of the statute is misguided.

<u>Saudi</u> is distinguishable from the facts in the present case. In <u>Saudi</u>, the party who was shopping for the most favorable forum was an original plaintiff-turned counterclaim defendant who cleverly sought to preclude the counterclaims of the original defendant turned counterclaim-plaintiff through the use of Delaware's borrowing statute. <u>Id.</u> at 17. It can hardly be said that the unusual and "twisted" facts in <u>Saudi</u> lay the groundwork for the Supreme Court's "invalidation" of prior borrowing statute interpretation.

Similarly, plaintiff's reliance on a recent memorandum opinion on a *Motion in Limine* in <u>B. Lewis Productions</u> is unpersuasive. In <u>B. Lewis</u>, this Court addressed an issue similar to that in <u>Saudi</u>. The <u>B. Lewis</u> opinion focused on a highly fact-specific circumstance where a plaintiff moved *in limine* to have Delaware law apply to the case against the defendant. Under Delaware's borrowing statute, if Delaware's three-year statute of limitations applied instead of New York's longer six-year statute, any

compulsory counterclaims of defendant would have been time-barred, and defendant would have lost the right to bring his compulsory counterclaims against plaintiff.

The Court in <u>B. Lewis</u> made it clear that this was a situation with specific "considerations" that resembled the considerations in Saudi and "appeared" to be applicable in the case before the Court. <u>B. Lewis</u> at *9. The Court found that the plaintiff purposely brought his claims in Delaware in order to preclude any viable compulsory counterclaims from being brought by defendant. The situation in <u>B. Lewis</u>, though similar in some ways to <u>Saudi,</u> is entirely distinguishable from the present case. Therefore, Archmere points this Court to decades of case law that consistently holds that when a foreign plaintiff brings suit in Delaware in diversity on a claim that arose outside of Delaware, the Delaware borrowing statute will apply.

Finally, Plaintiff cites to case law regarding the application of state law in federal cases. Plaintiff argues that because <u>Saudi</u> is a recent Supreme Court case that addresses a borrowing statute issue, this Court must simply apply *pro forma* the fact-sensitive analysis of <u>Saudi</u> to the facts of this case. Plaintiff correctly cites to <u>Camden County Board of Chosen Freeholders v. Beretta, U.S.A. Corp</u>., 273 F.3d 536, 541 (3d Cir.2001) to suggest that the role of a federal court sitting in diversity "is to follow the precedents of the state's highest court." Significantly, however, plaintiff failed to add the latter part of the statement, which instructs the federal court to "predict how that court would decide the issue presented. It is not the role of a federal court to expand or narrow state law in ways not foreshadowed by state precedent." <u>Id.</u> at 541.

In sum, the unusual and tangled factual scenario presented in <u>Saudi</u> should not guide this Court under the present facts. It would be difficult at best to use <u>Saudi</u> to

"predict" how the Supreme Court would rule on the present case. For years, this Court has found that "[a] court must apply Delaware's borrowing statute . . . when a non-Delaware resident brings a cause of action in a Delaware Court and the cause of action arose outside of Delaware." <u>Elmer</u>, 698 F.Supp. at 538. As it has in the past, this Court should find that the shorter of the two statutes of limitation must apply when a suit arising in a foreign state is filed in diversity in this forum.

**II.    Delaware Has The Most Significant Relationship To Plaintiff's Claims Against Archmere; Thus, Delaware Law And Its Statute Of Limitations Must Apply**

To the extent the Court somehow determines that Delaware's borrowing statute does not apply, it would become necessary to engage in a traditional choice of law analysis. In that respect, too, the Court should find that Delaware law has bearing and plaintiff's claims against Archmere are barred by Delaware's two-year statute of limitations.

**A.    The Relevant Factors for Determining the State with the Most Significant Relationship Require Application of Delaware Law**

Archmere is reluctant to engage in a complete reiteration of the Restatement (Second) of Conflicts' numerous factors to which this Court will look in determining the appropriate choice of law for this suit. That discussion has been covered extensively in the Opening Brief. However, given plaintiff's sole contention that the locale (Vermont) of the alleged injury (alleged sex abuse) trumps all else in a conflict analysis, even a cursory overview of the relevant factors establishes that Delaware law applies:

1.    <u>The Place where the Injury Occurred was Fortuitous</u>

Indeed, the place where the injury occurred plays an important role in choice of law analysis. Restatement (Second) of Conflicts §145, cmt. e.   However, certain situations develop where "the place of the injury will <u>not</u> play an important role in the selection of the state of the applicable law." <u>Id.</u> (Emphasis added). This will happen when the place of injury is fortuitous or when it "bears little relation to the occurrence and the parties with respect to the particular issue." <u>Thomson v. Reinco, Inc</u>., 2004 WL 1426971, *1 (Del. Super.)

Plaintiff's argument that the place of the alleged injury was *not* fortuitous must fail.   Here, the alleged injury is Father Smith's sexual abuse of the plaintiff on two occasions in 1984 and 1985.   Plaintiff contends that Fr. Smith transported him to Vermont "on several separate occasions, where Smith took full advantage of the long distance from plaintiff's family . . . ." (D. I. 17, Ans. Br. at 22).   The clear implication is that the alleged abuse occurred because Fr. Smith, on his own accord – not his employer's – took a minor without parental supervision on a weekend trip.   It is mere happenstance that Vermont was the destination for the weekend trip, and it is therefore mere happenstance that Vermont was the locale of the alleged abusive acts.

But more importantly, Archmere is sued for negligent hiring, negligent supervision, and breach of fiduciary duty.   Assuming *arguendo* Archmere had been negligent, its negligent conduct could have only occurred in Delaware. It hired employees in Delaware, it conducted all of its supervisory activity in Delaware, and the root of any fiduciary duty it may have owed Plaintiff lay in Delaware, the location of the school itself.   Archmere and the people who were responsible for hiring and supervising Smith have absolutely no connection to Vermont.

Taken together, both the happenstance nature of the weekend trip to Vermont and the complete absence of any relevant tie between Archmere and Vermont, it is clear that Vermont should be considered "fortuitous" in any choice of law analysis.

        2.     The Place Where the Injury Occurred was Fortuitous and Therefore Vermont Law Does Not Apply

Contrary to Plaintiff's assertion that "this [fortuitousness] factor is unhelpful" to the Court in making its choice of law determination, this factor militates in favor of applying Delaware law to the present case.  When the place of injury is fortuitous, as it is here, the place of the alleged misconduct of Archmere is given greater weight.   If Archmere acted negligently in any way, it did so in Delaware alone.  The allegations against Archmere are based on hiring and supervising practices, as well as on fiduciary relationships developed in an educational institution.

Fr. Smith, who took plaintiff to Vermont in his own car with his own funds, and who did so on his own weekend leisure time, did so on his own accord.  (Compl. at ¶¶34-36).  Smith's acts occurred in Vermont; Archmere's alleged negligence would have occurred only in Delaware.  Nothing Archmere did within its employment relationship with Fr. Smith, or anyone else, could fairly be said to have any implication with the laws of Vermont.

It remains, this Court has the discretion to apply Vermont law to Fr. Smith in his individual capacity without applying Vermont law to Archmere or any of the other defendants. Pittman v. Malandia, 2001 WL 1221704 at *3 (Del. Super.)

3.    The Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties Overwhelmingly Support the Application of Delaware Law

All defendants, including Archmere, are domiciled and/or incorporated in Delaware.  Bishop Saltarelli and Fr. Smith are Delaware residents. Plaintiff, though he lives elsewhere now, attended Archmere in Delaware full-time for four years. Although plaintiff states that "this fact is unhelpful as there is no common state where the parties are connected," Delaware was and is at the crux of the entire case.  (D. I. 17, Ans. Br. at 24).

4.    The Place Where the Relationship Between the Parties is Centered Warrants Application of Delaware Law

Plaintiff agrees that this factor indicates Delaware is the center of the relationship between Archmere and plaintiff.  (D. I. 17, Ans. Br. at 24).   In fact, plaintiff's relationship with all of the defendants is centered in Delaware.  The relationship between Archmere and the plaintiff arose in Delaware when Mr. Whitwell enrolled in the school and remained a full-time student for four years.  Plaintiff's relationship with Fr. Smith developed in Delaware.  Though plaintiff and Fr. Smith spent two weekends in Vermont during plaintiff's high school years, plaintiff and Smith returned home to Delaware on both occasions.  Plaintiff alleges no on-going ties to Vermont.  Plaintiff is an alumnus of Archmere in Delaware.  This factor too militates toward application of Delaware law.

**B.    Public Policy and The Restatement (Second) of Conflicts Requires Application of Delaware's Statute of Limitations**

As Archmere set forth in its Opening Brief, "In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the

parties, *unless*, with respect to the particular issue, some other state has a more significant relationship under the principles stated in §6 to the occurrence and the parties . . . ." Restatement (Second) of Conflicts §146 (1971)(emphasis added).  See Travelers Indemnity Company v. Lake, 594 A.2d 38, 48 (Del. 1991).  After taking the Restatement factors into account, it is clear that Delaware is the state with the most significant relationship to the issues of Archmere's alleged negligence.  It is plaintiff's proposition that Vermont's statute of limitations is somehow superior to Delaware's on a policy level and thus must have a more significant relationship to the present litigation.  This is *a non sequitur*, and plaintiff's "most significant relationship" argument must fail.

Plaintiff minimizes the legislative policy behind 10 Del. C. §8119, Delaware's personal injury statute of limitations.  Delaware's policy behind its two-year statute of limitations is no less valid or important than Vermont's.  Certainly, Delaware's citizens sympathize with victims of childhood sex abuse.  But Delaware citizens also understand that a personal injury suit must be brought in a timely manner. To impose Vermont's statute of limitations on this case based on Mr. Whitwell's fortuitous connection with Vermont would in effect say to Delaware citizens, who must abide by Delaware's statute of limitations for injuries arising in Delaware, that a foreign plaintiff may bring suit on foreign causes of action in Delaware's courts despite the fact that his claim is stale in Delaware.

Plaintiff repeatedly states in his Answering Brief that Delaware's only interest in applying a two-year statute of limitations on personal injury is to prevent stale claims in order to avoid a loss of evidence and witnesses.  (D. I. 17, Ans. Br. at 26).   Indeed, Delaware is interested in avoiding all of the difficulties inherent in trying a 20-year old

personal injury claim.   However, it is an unfair characterization of Delaware's law when plaintiff states that it is Delaware's policy to "prevent[] causes of actions [sic] for victims of childhood sex abuse because there is a mere possibility of stale evidence and witnesses." (Id. at 31).   This lawsuit must not alter Delaware's long-standing statute of limitations law; only the General Assembly may do so.   Regardless of natural sympathies towards Mr. Whitwell, and regardless of the magnitude of the trauma he may have sustained twenty years ago, Delaware courts may not extend statutes of limitations out of notions of fair play. Rash v. C.& M. Corp., 218 A.2d 670, 672 (Del. 1966); Smoluk v. Basco, Inc., 1988 WL 40156 (Del. Super. 1988).

Plaintiff makes much of the notion that Vermont "has an important interest in seeing plaintiff's claim decided according to Vermont law which would allow plaintiff's cause of action to remain viable." (D. I. 17, Ans. Br. at 30).   Therefore, it seems odd, to say the least, that plaintiff would pursue this Vermont policy issue in the federal court in Delaware, where the overarching objective of the Court will be the fair and dispassionate application of Delaware law.

### C.    Since Delaware Law Applies to the Issues of Alleged Negligence of Archmere, 10 Del. C. §8119 Bars Plaintiff's Claims Against Archmere

Archmere continues to acknowledge the consequences and implications of the abuse Mr. Whitwell claims to have suffered at the hands of Fr. Smith.   However, as a Delaware-based educational institution, Archmere emphasizes that the claims of negligence brought against it sound in Delaware law and must be resolved according to the laws of Delaware.   Plaintiff's alleged injuries occurred more than twenty years ago.   Delaware's statute of limitations for personal injures requires that a plaintiff bring suit

within two years of the date of his injury. 10 <u>Del.</u> <u>C.</u> §8119. The necessary result of the foregoing choice of law analysis and application of Delaware law to claims against Archmere is the dismissal of all claims against Archmere as time-barred.

**[THIS SECTION LEFT INTENTIONALLY BLANK]**

## CONCLUSION

For the foregoing reasons, Archmere respectfully requests this Honorable Court to grant its Motion to Dismiss plaintiff's claim as time-barred.

ELZUFON AUSTIN REARDON
TARLOV & MONDELL, P.A.

/s/ MARK L. REARDON

_____
MARK L. REARDON (BAR #2627)
300 Delaware Avenue, 17th Floor
P. O. Box 1630
Wilmington, DE   19899-1630
PH:  1.302.428.3181
FX:  1.302.428.3180
E-Mail: mreardon@elzufon.com
Attorney for Defendant
Archmere Academy, Inc.

G:\Docs\CLIENT\131230\16670\motions\00366493.DOC