IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH J. WHITWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-796-SLR |
| | ) |
| ARCHMERE ACADEMY, INC., | ) |
| CATHOLIC DIOCESE OF | ) |
| WILMINGTON, INC., REV. EDWARD | ) |
| J. SMITH, REV. MICHAEL A. | ) |
| SALTARELLI, | ) |
| | ) |
| Defendants. | ) |

Thomas S. Neuberger, Esquire and Stephen J. Neuberger, Esquire, The Neuberger Firm, P.A., Wilmington, Delaware. Counsel for Plaintiff.

Mark L. Reardon, Esquire, Elzufon Austin Reardon Tarlov & Mondell, P.A., Wilmington, Delaware. Counsel for Defendant Archmere Academy, Inc.

Anthony G. Flynn, Esquire and Neilli M. Walsh, Esquire, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware. Counsel for Defendants Catholic Diocese of Wilmington, Inc. and Rev. Michael A. Saltarelli.

**MEMORANDUM OPINION**

Dated: November 30, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On November 17, 2005, Kenneth J. Whitwell ("plaintiff"), a Lieutenant Commander in the United States Navy, filed the present action against Archmere Academy, Inc. ("Archmere"), Catholic Diocese of Wilmington, Inc. ("the Diocese"), Reverend Edward Smith ("Smith"), and Bishop Michael A. Saltarelli ("Saltarelli") (collectively, "defendants"). (D.I. 1) Plaintiff alleges that, while he was a student at Archmere in the mid-1980s, Smith (a priest who was then a teacher at Archmere) sexually abused him on two separate trips to Vermont. (Id. at ¶¶ 30-39) As a result, plaintiff is suing defendants in tort under the laws of Vermont. (D.I. 1, passim) This court has diversity jurisdiction under 28 U.S.C. § 1332, and venue is proper under 28 U.S.C. § 1391(a)(1). Currently before the court are Archmere's, the Diocese's, and Saltarelli's motions to dismiss. (D.I. 6, 7, and 8)

## II. BACKGROUND

During the time period relevant to the case at bar, Smith was a priest and teacher at Archmere, a private Catholic high school located in Claymont, Delaware. (D.I. 1 at ¶¶ 9, 13) Plaintiff, born March 1, 1968, was a student at Archmere from 1982 to 1986. (Id. at ¶¶ 8, 30) According to plaintiff, "[d]uring plaintiff's sophomore and junior years in high school, in February or March of 1984 and 1985, Smith took plaintiff and another former student from Philadelphia on ski trips to

Killington, Vermont over the weekend." (Id. at ¶ 37) Plaintiff alleges that, while in Vermont, Smith sexually molested him in violation of numerous Vermont statutes.[1] As a result of Smith's conduct, plaintiff claims that he has suffered both immediate and long term injuries. (Id. at ¶ 40) Plaintiff asserts that he did not discover the causal relationship between the alleged abuse and his long term injuries until the spring of 2003. (Id. at ¶ 43)

Plaintiff is suing Smith for assault, battery, childhood sexual abuse, and intentional infliction of emotional distress. He has named Archmere and the Diocese as defendants under the theories of negligent hiring, negligent supervision, and breach of fiduciary duties.[2] (Id. at ¶¶ 79-121) Although the case was filed in Delaware as a diversity of citizenship action, plaintiff contends that the case should be decided under the laws of Vermont, the State in which the alleged abuse took place. (D.I. 1, passim) Archmere, the Diocese, and Saltarelli claim that the

---

[1] According to plaintiff, Smith's conduct violated the following laws: Vt. Stat. Ann. tit. 13 §§ 2601, 2602 (1984) (lewd and lascivious conduct; lewd and lascivious conduct with a child); Vt. Stat. Ann. tit. 13 § 3252 (1984) (sexual assault); and Vt. Stat. Ann. tit. 13 § 3253 (1984) (aggravated sexual assault). (D.I. 1 at ¶¶ 39, 82-99)

[2] Plaintiff has named Saltarelli, the Bishop of the Diocese, as a defendant "only in his official capacity as agent or alter ego of the Diocese for purposes of collecting a money judgment against the Diocese, should its assets be titled in his name." (D.I. 1 at ¶ 14)

2

case must be decided under Delaware law, and have filed motions to dismiss because the applicable statute of limitations in Delaware has run. Saltarelli has also moved to dismiss on the grounds that he is not a proper defendant to this action.

### III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409

## IV. DISCUSSION

### A. Statutes of Limitations for Personal Injuries

Archmere, the Diocese, and Saltarelli have all moved to dismiss plaintiff's claims under Fed. R. Civ. P. 12(b)(6)[3] because they are time-barred under the applicable statute of limitations in Delaware.[4] (D.I. 6, 7, 8) Plaintiff urges the court to apply Vermont's statute of limitations for personal injuries stemming from childhood sexual abuse[5] to his claims against all four defendants and alleges that, although Smith

---

[3]In his opening brief, Saltarelli states that he "adopts the arguments set forth in the Opening Brief of Defendant Catholic Diocese of Wilmington, Inc. In Support Of Its Motion to Dismiss." (D.I. 15 at 2)

[4]"No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained . . . ." 10 Del. C. § 8119.

[5]Under Vermont law,

> [a] civil action brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within six years of the act alleged to have caused the injury or condition, or six years of the time the victim discovered that the injury or condition was caused by that act, whichever period expires later. The victim need not establish which act in a series of continuing sexual abuse or exploitation incidents caused the injury.

Vt. Stat. Ann. tit. 12 § 522(a). The six-year statute of limitations applies retroactively to "all causes of action commenced on or after [July 1, 1990], so long as either the act of sexual abuse or the discovery that the injury or condition was caused by the act of sexual abuse occurred on or after July 1, 1984." 1990 Vt. Laws Pub. Act 292 § 4(b).

4

abused him on trips to Vermont in 1984 and 1985, plaintiff "did not make the causal connection between Smith's acts of sexual abuse . . . and his long term emotional and psychiatric injuries until the Spring of 2003." (D.I. 17 at 19, citing D.I. 1 at ¶ 49) Accepting all of the material allegations of the complaint as true, plaintiff's suit, which was filed November 17, 2005, is barred under Delaware law but does not run afoul of Vermont's six-year statute of limitations. In order to determine whether plaintiff has stated a claim upon which relief can be granted with respect to the moving defendants, the court must determine which State's statute of limitations applies to the case at bar.

### B. Applicable Conflict of Law Rules

"A Federal District Court sitting in diversity in Delaware must apply Delaware conflict of law rules in determining what state law will govern." Dymond v. NBC, Inc., 559 F. Supp. 734, 735 (D. Del. 1983). The Delaware Supreme Court has "adopted the Restatement of Conflicts 'most significant relationship' test for Delaware." Turner v. Lipschultz, 619 A.2d 912, 914-15 (Del. 1992). See also Travelers Indemnity Co. v. Lake, 594 A.2d 38 (Del. 1991). As a result, in Delaware "the local law of the state which 'has the most significant relationship to the occurrence and the parties under the principles stated in § 6 [of the Restatement (Second) of Conflicts]' will govern the rights of

litigants in a tort suit." Lake, 594 A.2d at 47 (quoting Restatement (Second) of Conflicts § 145(1)).

"Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'dépeçage.'" Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006) (citing, inter alia, Compagnie des Bauxites v. Argonaut-Midwest Ins. Co., 880 F.2d 685, 691 (3d Cir. 1989)). The Superior Court of Delaware has discussed this concept, noting:

> Dépeçage is the process of deciding choice of law on an issue by issue basis, with the result that the law of one state may be determined to apply to one issue and the law of a different state to another issue in the same case. Although this doctrine has apparently not been recognized by name in any prior Delaware case, the Federal District Court for Delaware has noted that it has been "tacitly embraced" by Delaware trial courts.

Pittman v. Maldania, Inc., No. 00C-01-029 JTV, 2001 WL 1221704, at *3 (Del. Super. July 31, 2001) (quoting Naghiu v. Inter-Continental Hotels Group, Inc., 165 F.R.D. 413, 422 n.4 (D. Del. 1996)).

In 1973, author Willis L.M. Reese wrote:

> Today, it is commonly stated that, with respect to each issue, the court should seek to apply the relevant rule of the state which has the greatest concern in the determination of that issue. Application of this notion will inevitably lead to dépeçage, since cases can be expected to arise with some frequency where not only do different states have the greatest concern in the determination of different issues but where the relevant rules of these states with respect to these issues are not the same.

Willis L.M. Reese, Dépeçage: A Common Phenomenon in Choice of Law, 73 Colum. L. Rev. 58, 59 (1973). Plaintiff has sued Smith for allegedly molesting him while on weekend trips in the State of Vermont. The causes of action plaintiff has asserted against Archmere and the Diocese are grounded on Smith's status as a priest and teacher in Delaware. Because the most significant relationship of each of the distinct issues in the action at bar could be with a different State, the court will employ the principle of dépeçage and conduct a separate choice of law analysis for the charges against Archmere, the Diocese, and Saltarelli (count III of the complaint).[6]

### C. Most Significant Relationship (Count III)

The "most significant relationship" test is derived from §§ 6 and 145 of the Restatement (Second) of Conflicts.

> "Section Six of the Restatement lists the following relevant choice of law considerations:
>
> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,

---

[6]Because Smith has not joined the other defendants' motions to dismiss, the court will defer any choice of law analysis on counts I and II of the complaint.

7

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

<u>Travelers Indemnity Co. v. Lake</u>, 594 A.2d 38, 47 (Del. 1991) (quoting Restatement (Second) of Conflicts § 6). Courts conducting an analysis under § 6 should consider:

"(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue."

<u>Id.</u> (quoting Restatement (Second) of Conflicts § 145(2)). The default rule in a personal injury case, according to the Delaware Supreme Court, is to "apply the law of the state where the injury occurred"; the forum state's laws should control only if "the forum state has [a] more 'significant relationship' under the Section Six principles to the 'occurrence and the parties.'" <u>Id.</u> (quoting Restatement (Second) of Conflicts § 146).

### 1. Restatement (Second) of Conflicts § 145

Plaintiff describes the events that allegedly occurred in Vermont in ¶¶ 30-40 of his complaint. (D.I. 1) Although plaintiff asserts that defendant Smith was "a person of great influence and persuasion" because of his position "[a]s a licensed priest and campus minister," plaintiff specifically relates defendant Smith's personal wealth to plaintiff's decision to travel to Vermont.[7] There is no allegation in the complaint that the two trips to Vermont were school-sponsored activities or that defendants Archmere and the Diocese were aware of the trips. Plaintiff instead avers that, because defendant Smith was an employee/agent of these defendants and defendants knew or should have known that defendant Smith was a "pedophile Roman Catholic priest," these defendants should be charged with knowledge of the specific conduct at issue. Clearly, however, that constructive knowledge is based only on the employment/agency relationships that are centered in Delaware. There is nothing in the complaint that ties the moving defendants to the State of Vermont except plaintiff's legal theory that these defendants, as a general policy, should have prevented defendant Smith from associating with children. Although the theory may well be a viable one

---

[7]For instance, ¶ 36 of the complaint states that, "[t]o encourage plaintiff to go away with him to Vermont, Smith gave him many, many gifts and flashed a large pocketful of $20 bills. He also let plaintiff drive his late model car repeatedly before plaintiff was 16 years of age."

under other circumstances, it does not constitute an appropriate contact for purposes of the "significant relationship" test under the Restatement.

The locus of plaintiff's immediate injuries, while entitled to much weight, is this action's sole connection with the State of Vermont. It is recognized in the Restatement, however, that

> situations do arise . . . where the place of injury will not play an important role in the selection of the state of the applicable law. This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue.

Restatement (Second) of Conflicts § 145 cmt. e (citing id. § 146 cmts. d-e). Accord Rasmussen v. Uniroyal Goodrich Tire Co., No. 93C-04-058, 1995 WL 945556, at *2 (Del. Super. Aug. 18, 1995). Plaintiff has not alleged that Smith's decision to take plaintiff to Vermont (as opposed to any other particular State) was anything more than the fortuitous choice of a location far from parental supervision. As noted above, the moving defendants' relationship to the alleged conduct is a legal one based on Smith's status as an employee/agent, a relationship centered in Delaware. Therefore, under the factors enumerated in § 145, the State of Delaware has greater contacts with the issues implicated by count III of the complaint.

## 2. Restatement (Second) of Conflicts § 6

The interests and policies of the forum state and any other states involved with the issue under consideration are relevant factors in a court's § 6 analysis. While both Vermont and Delaware have an interest in allowing victims of personal injury to seek redress from those responsible, their procedural requirements for doing so differ greatly. Vermont's statute of limitations for injuries stemming from childhood sexual abuse is very broad, and begins to run only when the victim discovers the causal link between the abuse and his injuries. Delaware, on the other hand, has set a strict two-year limit on the commencement of such personal injury actions. The United States Supreme Court has stated that statutes of limitations

> represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired . . . .

United States v. Kubrick, 444 U.S. 111, 117 (1979) (citations omitted). In setting a short statute of limitations for personal injury actions, Delaware has made such a "pervasive legislative judgment" that plaintiff should not be able to sue Archmere and the Diocese for personal injuries twenty years after their tortious conduct allegedly occurred.

A finding that plaintiff's claims against Archmere and the Diocese are time-barred under Delaware's statute of limitations promotes "certainty, predictability and uniformity of result" with regard to liability for personal injuries stemming from tortious conduct occurring within the State of Delaware. Likewise, under the Delaware Code, "the determination and application of the law to be applied" to count III of the complaint is relatively easy:  10 Del. C. § 8119 bars the initiation of lawsuits for personal injuries more than two years after the injuries were sustained; because plaintiff's injuries were sustained in 1984 and 1985, more than two years before he filed the instant action, count III would be time-barred under Delaware law.  Even if the statute of limitations were tolled until plaintiff made the causal link between the alleged abuse and his injuries in spring 2003, plaintiff did not file the instant action until November 2005, more than two years later. As they pertain to count III of the complaint, the choice of law factors laid out in §§ 6 and 145 of the Restatement (Second) of Conflicts weigh heavily in favor of the laws of the State of Delaware.  The court, therefore, finds that, under 10 Del. C. § 8119, plaintiff's claims against Archmere, the Diocese and, by extension, Saltarelli, are time-barred under Delaware law and defendants' motions to dismiss (D.I. 6, 7, 8) are granted.

**V.  CONCLUSION**

For the reasons stated above, defendants Archmere's, the Diocese's, and Saltarelli's motions to dismiss the allegations against them as time-barred will be granted.[8]  An appropriate order shall issue.

---

[8]Defendant Saltarelli's motion to dismiss based on his being named a party solely for purposes of collecting a judgment at the end of the case is denied as moot.